UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **KELLY MUNYON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | Case No. 08-2194 |
| **GARY HENSON, Sgt.,** ) | |
| ) | |
| **Defendant.** ) | |

# ORDER

In August 2008, Plaintiff Kelly Munyon filed a Complaint (#1) against Defendant Gary Henson, alleging violations of her constitutional rights. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In September 2009, Defendant filed a Motion for Summary Judgment (#12). In December 2009, Plaintiff filed a Response to Motion for Summary Judgment (#16). After reviewing the parties' pleadings and memoranda and the evidence, this Court **GRANTS** Defendant's Motion for Summary Judgment **(#12)**.

### I. Standard

A court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex,* 477 U.S. at 323.

The Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex,* 477 U.S. at 322-23. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983). The Court will not rely upon statements that are conclusory, but will, where applicable, rely upon the more reliable evidence in the record. *See Market v. Ill. Bell Tele. Co.*, No. 01 C 3841, 2003 WL 22697284, *6 (N.D. Ill. Nov. 13, 2003) (unreported). A scintilla of evidence in support of the nonmovant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of any element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

**II. Background**

As an initial matter, Plaintiff's response to Defendant's motion for summary judgment fails to comply with Local Rules for the Central District of Illinois because Plaintiff did not respond to Defendant's Statement of Material Facts. *See* CDIL-LR 7.1(2)(b)(1-4).

As the Local Rules state, the consequences for failing to comply are discussed thoroughly in *Waldridge v. American Hoechst Corporation*, 24 F.3d 918 (7th Cir. 1994). *See* CDIL-LR 7.1(C). When the nonmoving party does not respond to the moving party's statement of facts, the nonmoving party concedes the moving party's version of the facts. *Waldridge*, 24 F.3d at 922. Here, although Plaintiff has presented her own Statement of Material Facts, she failed to

respond to Defendant's material facts. As a result, the Court will treat Defendant's material facts as undisputed, unless Plaintiff's facts clearly contradict them.

Nevertheless, Plaintiff's failure to dispute Defendant's version of the facts does not automatically result in summary judgment for Defendant. *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995) (a party's failure to submit a response to a motion for summary judgment does not automatically result in summary judgment for the moving party). It remains the moving party's burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994). Accordingly, the Court must determine whether the undisputed facts in this case show that summary judgment is proper as a matter of law. *LaSalle Bank*, 54 F.3d at 392.

The following facts are undisputed. Defendant is a sergeant for the Illinois State Police who works for the Division of Forensic Services. On November 7, 2007, he attended a hearing in Wheaton, Illinois, and he was driving himself and two other men back from the hearing. The passengers were Captain Randy Pollard, a jail administrator for the Jefferson County Sheriff's Office, and Jesse Garcia, a correctional officer. Defendant was dressed in civilian clothes, which is what he usually wore for his job. Defendant was driving a 2007 Ford Expedition that had state police license plates, but no other exterior markings that indicated it was a state police vehicle. The vehicle also had internal lights including red and blue flashing strobe lights attached to the passenger side sunvisor, strobe lights in the rear of the vehicle, wig-wag headlights, and a spotlight on the driver's side.

On the same day, Plaintiff was driving southbound on Interstate 57. Between 5:30 and 7:00 p.m., Plaintiff and Defendant were driving in close proximity to each other. After observing Plaintiff, Defendant believed that Plaintiff was driving faster than the speed limit, tailgating his vehicle at times, and operating her car in an unsafe and aggressive manner. He decided to stop her and warn her that she was operating her motor vehicle improperly. He did not have the ability to give her a ticket at that time because he did not carry a ticket book.

Defendant signaled Plaintiff to pull over by turning on his vehicle's strobe lights and shining the spotlight into the back of Plaintiff's vehicle. Plaintiff became nervous and called 911 on her cell phone and reported what was happening. She remained connected with the 911 operator throughout most of the incident.

When Plaintiff did not pull over, Defendant passed her vehicle and executed a "rolling stop" or "rolling road block," by driving in front of Plaintiff and slowing down to get Plaintiff to stop. Defendant pulled onto the shoulder of the road and Plaintiff stopped in the right lane of traffic. Defendant then got out of his vehicle and told Plaintiff to pull off the road. She was still talking to the 911 operator and did not comply. He also told Plaintiff several times to provide her driver's license. Plaintiff did not comply. At more or less the same time, Plaintiff told the 911 operator that the vehicle that stopped her had Illinois State Police license plates and she told the operator the plate number. The operator told Plaintiff to ask Defendant to identify himself. In the midst of yelling at Plaintiff to provide her license and roll down her window, Defendant told Plaintiff he was a State Police officer and held his badge against her car window, which she had not yet rolled down. Eventually, Plaintiff gave Defendant her cell phone and her license. Plaintiff states that Defendant was very loud, angry, and rude to her and that she became hysterical.

Defendant took Plaintiff's license to his vehicle to perform a driver's license check. Shortly thereafter, additional officers arrived and spoke with Plaintiff and Defendant. Plaintiff and Defendant had no further contact and no tickets were issued to Plaintiff.

According to the Paragraph III.A.39 of the Illinois State Police Rules of Conduct (hereinafter "ROC"), a rolling road block is unauthorized. Thus, Defendant violated the ROC by the manner in which he stopped Plaintiff. In addition, Defendant also violated ROC-002, Paragraph III.A.12, when he failed to notify Communications of the enforcement action prior to the stop, failed to provide the appropriate vehicle identification information and change in status code, failed to make the stop only when the violator was endangering her safety or the safety of

others, and failed to request assistance from uniformed officers. On May 3, 2008, Defendant received a letter of reprimand based on his violations of the ROC. (#17-2, pp. 35-36.)

In her complaint, Plaintiff alleged that Defendant deprived her of (1) the right to be secure in her person under the Fourth Amendment; (2) the right to be informed of the nature and cause of the accusation against her under the Sixth Amendment; and (3) the right not to be deprived of life and liberty without due process of law and the right to equal protection of the law, under the Fourteenth Amendment. At the status hearing held January 21, 2010, Plaintiff's attorney confirmed that Plaintiff has abandoned any claims related to due process or equal protection.

### III. Analysis

Defendant argues that he is entitled to judgment as a matter of law because (1) Plaintiff cannot demonstrate that Defendant violated her right to be informed of the nature and cause of the accusation against her; (2) Defendant had probable cause to stop Plaintiff's vehicle; (3) Defendant's conduct in performing the traffic stop was not unreasonable; and, alternatively, (4) qualified immunity shields Defendant from liability.

#### A. Sixth Amendment Claim

Defendant first argues that Plaintiff cannot establish her Sixth Amendment claim because she was never prosecuted. Plaintiff does not challenge this. *See Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (noting that claims to which the nonmoving party fails to respond on summary judgment are deemed abandoned).

"Although the Sixth Amendment provides an 'accused' the right 'to be informed of the nature and cause of the accusation' . . . the Sixth Amendment's protection does not come into play until the government has committed itself to prosecution." *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987). It is undisputed that Plaintiff was not ticketed (#1, ¶ 9, #13, ¶ 27), and the

record contains no evidence that she was prosecuted as a result of the incident. Accordingly, the Court grants summary judgment in favor of Defendant as to the Sixth Amendment claim.

### B. The Fourth Amendment Claim

Defendant next argues that Plaintiff cannot establish her Fourth Amendment claim because the facts show that Defendant had probable cause to stop Plaintiff's vehicle and because Defendant's conduct during the stop was not constitutionally unreasonable.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. Its "central requirement" is one of reasonableness. *Texas v. Brown*, 460 U.S. 730, 739 (1983). To establish a constitutional violation, a plaintiff must show that (1) the defendant's conduct constituted a seizure, and (2) the seizure, if one occurred, was unreasonable. *White v. City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002) (stating the elements of a Fourth Amendment claim).

The temporary detention of an individual during a traffic stop constitutes a seizure within the meaning of the Fourth Amendment and is subject to the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Neither party disputes that Plaintiff was "seized" as a result of the traffic stop.

The Court will consider the reasonableness of Defendant's conduct in terms of the whether he had probable cause to stop Plaintiff and whether he acted reasonably in the manner in which he conducted the stop including the method of stopping, i.e., the rolling stop, and Defendant's conduct after the vehicles had stopped.

### 1. The Stop

Defendant argues that the traffic stop was reasonable because Defendant had probable cause to stop Plaintiff. Plaintiff contends that the facts are disputed as to whether Defendant had probable cause, thus precluding summary judgment.

The United States Supreme Court has held that the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Whren*, 517 U.S. at 810. "An officer has probable cause for a traffic stop when he has an objectively reasonable basis to believe a traffic law has been violated. Moreover, probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Hernandez-Rivas,* 513 F.3d 753, 758-59 (7th Cir. 2008) (citation omitted). As a result, a plaintiff cannot state a claim for violation of the Fourth Amendment based on a traffic stop where an officer has probable cause to make the stop. *Schor v. Daley*, 563 F. Supp. 2d 893, 899 (N.D. Ill. 2008).

The court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer. *Mustafa v. City of Chi.,* 442 F.3d 544, 547 (7th Cir. 2006). Furthermore, although probable cause is often a jury issue, when there is no dispute as to facts or the inferences to be drawn, a court can determine whether probable exists. *Chelios v. Heavener,* 520 F.3d 678, 686 (7th Cir. 2008) ("The probable cause determination must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.").

Here, Defendant observed Plaintiff driving and believed that she was exceeding the speed limit, tailgating, and operating her car in an unsafe and aggressive manner. (#13, ¶¶ 8, 9, 11.) Plaintiff has not challenged these statements nor has she denied that she was exceeding the speed limit, tailgating, and operating her car in an unsafe manner. Therefore, Defendant had probable cause to initiate the traffic stop. *See United States v. Figueroa-Espana,* 511 F.3d 696, 701 (7th Cir. 2007) (in the context of a motion to suppress, noting that plaintiff rightly did not challenge the constitutionality of a traffic stop where the officer observed that the vehicle was in violation of the traffic code); *People v. Sorenson,* 752 N.E.2d 1078, 1084 (Ill. 2001) (in the context of a motion to suppress, stating that the stop of the vehicle in which the defendant was a passenger was justified based on the police officer's observation of a traffic violation).

## 2. Conduct During the Stop

Defendant next argues that his conduct during the stop was reasonable. "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application"; "its proper application requires careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Accordingly, the Court must consider Plaintiff's claims in light of the specific circumstances in this case.

Generally, a Fourth Amendment claim that challenges the conduct of a police officer after a valid stop is based on excessive force. Plaintiff's facts focus on the interaction between Defendant and Plaintiff after both vehicles had stopped. In Paragraph 7, Plaintiff stated as follows:

> Defendant kept screaming at Plaintiff, trying to get her to give him her license . . . . Defendant was very loud, angry, and rude to her. Plaintiff asked for a photo ID, Defendant did not have a photo ID, but he slammed his badge against the window and screamed at Plaintiff. Defendant told Plaintiff to roll down her window and if she didn't roll down her window, he was going to physically take her out of the car.

(#17-2, ¶ 7.) To the extent this indicates that Plaintiff is basing her excessive force claim on Defendant's yelling and purported rudeness, the Court notes that Plaintiff has not provided any evidence that Defendant used excess force or, in fact, any force. Although Plaintiff's brief does not discuss this conduct, the Court will address it briefly.

Defendant acknowledges that, even in the absence of any use of force, circumstances might exist in which harassing and abusive behavior by a police officer could rise to the level that makes the seizure "unreasonable" for Fourth Amendment purposes. *See Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005). Nevertheless, he contends that his conduct did not violate Plaintiff's Fourth Amendment rights. In support, Defendant cited *YHWHnewBN v. County of Cook*, No. 02 C 5371, 2003 WL 22736216 (N.D. Ill. Nov. 19, 2003) (unreported), in which the Northern District court dismissed the plaintiff's Fourth Amendment claims related to threats and derogatory statements that certain police officers made to the plaintiff during the process of seizing some property. The court stated that, while the defendant's "alleged conduct and

8

statements are reprehensible and hurtful if true, they do not rise to the level of a constitutional violation" under the Fourth Amendment. *Id.* at *3. The court continued as follows:

> The Constitution does not protect against general rudeness, verbal abuse and verbal harassment. *Slagel v. Shell Oil Refinery,* 811 F.Supp. 378, 382 (C.D. Ill. 1993); *Young v. Newtown,* 82 C 4327, 1985 WL 2405, at *2 (N.D. Ill. June 28, 1985). In short, "where the colloquy between police and the arrestee does not rise to the level of physical harm, there is no violation of a constitutional right actionable under Section 1983." *Simms v. Reiner,* 419 F.Supp. 468, 474 (N.D. Ill. 1976).

*Id. See Martin v. Ross*, Cause No. 1:08-CV-199-TS, 2008 WL 5070440, *3 (N.D. Ind. Nov. 25, 2008) (unreported) ("The Fourth Amendment, however, does not protect citizens from being generally harassed and treated unfairly or unprofessionally by a police department or individual police officers; it protects citizens against unreasonable searches and seizures.") (citing *Siebert v. Severino,* 256 F.3d 648, 653 (7th Cir. 2001)); *Slagel*, 811 F. Supp. at 382 ("[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while 'unprofessional and inexcusable,' are simply not sufficient to state a constitutional claim."); *Doe v. City of Chi.*, 931 F. Supp. 600, 602 (N.D. Ill. 1996) (stating that verbal abuse and ridicule do not violate the Fourth Amendment).

The Court agrees with Defendant. After carefully considering the evidence and the relevant case law, the Court concludes that Defendant's conduct, however rude and unprofessional, does not rise to the level of a Fourth Amendment violation. Plaintiff has raised no issues of fact that preclude summary judgment on this issue.

Based on a statement Plaintiff's attorney made during the January 21, 2010, status hearing, it appears that Plaintiff is primarily arguing that Defendant violated Plaintiff's constitutional rights when he stopped Plaintiff in the right traffic lane of Interstate 57, thus "subjecting Plaintiff to a possible serious accident for the unauthorized rolling stop." (#17, p. 4.) Plaintiff did not discuss her reasoning regarding this argument, other than stating that "[a] state police officer who is assigned to perform forensic services and who was plain-clothed and in an unmarked state car misused his authority to vent his road rage." (#17, p. 4.) Plaintiff also cited

no case law to support her contention that Defendant's act of stopping Plaintiff in the traffic lane violated her Fourth Amendment rights.

Plaintiff also notes that the State Police Rules of Conduct do not authorize officers to perform a rolling stop and Defendant received an official reprimand for doing so (*see* #17-2, pp. 35-36). It appears that Plaintiff may be relying on these undisputed facts to establish that Defendant's conduct was unconstitutional. However, "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chi.,* 472 F.3d 444, 454 (7th Cir. 2006) ("The fact that excessive force is "not capable of precise definition" necessarily means that, while the [Chicago Police Department's] General Order may give police administration a framework whereby commanders may evaluate officer conduct and job performance, it sheds no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter."). Moreover, the Seventh Circuit court has consistently held that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Id.* (citing *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003)). Accordingly, Plaintiff cannot establish that Defendant's conduct violated the Fourth Amendment based on his use and execution of an unauthorized rolling stop and the reprimand he received as a result.

Finally, Plaintiff states in her memorandum that there are disputed issues of fact related to this issue. The Seventh Circuit court has stated that summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence she has that would convince a trier of fact to accept her version of events. *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). Here, Plaintiff did not explain what facts she believes are disputed or cite any evidence in support of this contention, therefore, she has failed to raise a genuine issue of material fact sufficient to avoid summary judgment. Accordingly, the Court grants summary judgment in favor of Defendant as to Plaintiff's Fourth Amendment claim.

### 3. Qualified Immunity

Defendant also contends that the doctrine of qualified immunity protects him from liability because the law was not clearly established that his conduct during and after the stop violated the Constitution. Even if the Court were to assume that Defendant's conduct was unreasonable under the Fourth Amendment, the Court agrees that Defendant is protected by qualified immunity.

The defense of qualified immunity shields from liability government actors who are performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Seventh Circuit court has developed a two-step analysis for courts to use in qualified immunity cases. Courts first determine whether the alleged conduct violated a plaintiff's constitutional rights, and then, if rights were violated, whether those rights were clearly established at the time of the violation occurred. *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). Whether a defendant is entitled to qualified immunity is a question of law. *Apostol v. Landau*, 957 F.2d 339, 342 (7th Cir. 1992).

To demonstrate that the law was clearly established, a plaintiff must do more than simply show the violation of broad constitutional rights. *Supreme Video v. Schauz*, 15 F.3d 1435, 1439 (7th Cir. 1994). Determining whether the law is clearly established requires a comparison of the specific facts of the case with the body of law that existed at the time of the alleged conduct. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). Thus, a plaintiff must identify a closely-analogous case or offer evidence that a defendant's conduct so obviously violated the constitutional right that a reasonable official would have known he was violating the plaintiff's rights. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). Once a public official raises the defense of qualified immunity, the plaintiff bears the burden of establishing the existence of the

allegedly clearly established constitutional right. *Rakovich v. Wade*, 850 F.2d 1180, 1202 (7th Cir. 1988), *abrogated in part on other grounds, Spiegla v. Hull,* 371 F.3d 928, 941-42 (7th Cir. 2004).

In the context of this case involving a police officer who performed a valid stop, the relevant question is whether a reasonably-trained officer would have known that he was depriving an individual of her constitutional rights when he (1) performed an unauthorized rolling stop and stopped the driver's vehicle in the traffic lane, and/or (2) acted rudely and yelled at the driver after the stop. In challenging Defendant's qualified immunity argument, Plaintiff cites *Leon v. City of Chicago*, 619 N.E.2d 199 (Ill. 1993), which involved a police officer's stop of a driver in the traffic lane. That case, which addresses the special duty exception to immunity for negligence under Illinois law, is distinguishable on a number of grounds, but most significantly because the plaintiff alleges a negligence claim rather than a constitutional claim. As a result, the *Leon* case would not put a reasonably-trained officer on notice that stopping a driver in the traffic lane violated the driver's constitutional rights under the Fourth Amendment. Plaintiff has cited no other authority that would give notice that conduct similar to Defendant's violates the Fourth Amendment. In the absence of a closely-analogous case showing that the conduct at issue violated Plaintiff's constitutional rights under the Fourth Amendment, the Court concludes that Defendant is entitled to qualified immunity for his conduct. Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's Fourth Amendment claim.

### IV. Summary

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment **(#12)**. This case is terminated.

ENTER this 2nd day of February, 2010.

                                                       s/ DAVID G. BERNTHAL
                                                         U.S. MAGISTRATE JUDGE